IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF CONNECTICUT

| | |
|---|---|
| NATIONAL ASSOCIATION FOR THE ADVANCEMENT OF COLORED PEOPLE, NAACP CONNECTICUT STATE CONFERENCE, and NAACP BOSTON BRANCH,<br><br>*Plaintiffs*,<br><br>v.<br><br>U.S. DEPARTMENT OF COMMERCE,<br><br>*Defendant*. | Civil Action No. _____<br><br>COMPLAINT |

Every ten years, the Constitution requires the federal government to attempt to count every U.S. resident. The results of the census help determine the balance of political power among and within the States and the distribution of day-to-day government services. The federal government uses Census data to apportion seats in the U.S. House of Representatives, draw legislative districts, enforce voting rights, build schools, and allocate more than $400 billion in federal funds.

The critical task of conducting the decennial census falls to the Census Bureau ("the Bureau"), a unit within the Defendant U.S. Department of Commerce. The Bureau has six regional offices and dozens of temporary processing facilities, and employs more than half a million temporary workers. The scale of the census is reflected by its cost: more than $12 billion in 2010. Yet despite the Bureau's extensive planning and funding, the agency routinely undercounts minorities, young children, home renters, and low-income persons. Undercounted communities, in turn, may not receive their fair share of

1

federal funding, especially in key areas such as education and infrastructure.

Given the scale, cost, and impact of the census, the public has an overwhelming interest in ensuring that its count is accurate and fair. And given the Census Bureau's history of undercounting minorities, transparency is of particular importance to Plaintiffs, as well as to their tens of thousands of members.

The Census Bureau faces serious obstacles in preparing for the 2020 count. These include hiring and personnel gaps, exacerbated by a federal hiring freeze imposed in January 2017; an unprecedented move to digitize the census, with unknown vulnerabilities to cyberattack and disparate impacts on communities with less access to broadband internet services; a lack of senior leadership; and budgetary shortfalls at a time when the Bureau's funding should be substantially increasing. These deficiencies recently prompted the U.S. Government Accountability Office to label the 2020 census a "high-risk" program. Yet the Bureau has failed to fully communicate to the public how it plans to carry out the 2020 census in light of these obstacles.

Plaintiffs submitted a request under the Freedom of Information Act ("FOIA") to obtain records about the Bureau's plans for the 2020 census. Plaintiffs requested records concerning hiring practices, cancellations/delays of tests, digitization, and outreach to hard-to-count populations, and other topics. The Bureau failed to respond to Plaintiffs' request within the statutory deadline, in violation of the FOIA. Plaintiffs bring this action to compel the Bureau's immediate production of responsive, non-exempt records.

## JURISDICTION AND VENUE

1. This court has jurisdiction over this matter pursuant to 5 U.S.C. § 552(a)(4)(B) and 28 U.S.C. §§ 1331 and 1361.

2. Venue lies in this district under 5 U.S.C. § 552(a)(4)(B) and 28 U.S.C. § 1391(e), as the President of Plaintiff NAACP-CT resides in, and Plaintiff NAACP-CT maintains its principal place of business in, the District of Connecticut and no real property is involved in this action.

**PARTIES**

3. Plaintiff NAACP, a § 501(c)(3) non-profit, is the nation's oldest and largest grassroots-based civil rights organization. Its mission is to ensure the political, educational, social, and economic equality of rights of all persons and to eliminate race-based discrimination. The NAACP is headquartered in Baltimore, MD, and has over two thousand local units nationwide. These units have and will continue to help promote the accuracy of the census by conducting outreach to community members about the importance of being counted.

4. Plaintiff NAACP Connecticut State Conference ("NAACP CT") is the statewide organ of the NAACP in Connecticut. NAACP CT's principal place of business is in Connecticut. NAACP CT has a long history of advocating for civil rights and social justice throughout Connecticut, and among its activities, it holds annual conventions to train its members about important issues, including the decennial census.

5. Plaintiff NAACP Boston Branch ("NAACP Boston") is the citywide organ of the NAACP in Boston. NAACP Boston promotes civil rights and social justice in Boston and has also regularly helped educate Massachusetts NAACP members about the decennial census.

6. The Census Bureau, a component of Defendant U.S. Department of Commerce, is charged with completing the decennial census. The Department of

Commerce is an agency within the meaning of 5 U.S.C. § 552(f), and is in possession of, and exerts control over, records responsive to Plaintiffs' FOIA request to it.

## FACTUAL ALLEGATIONS

7. Every ten years, as required by Article I, Section 2 of the Constitution, the government attempts to count every resident of the United States.

8. The information gathered by this "actual Enumeration"—the decennial census—is used to determine the balance of political power both between and within the States. The census results are used, *inter alia*, for seat apportionment in the U.S. House of Representatives; redistricting for congressional districts and state legislative districts; and voting rights enforcement.

9. The federal government also uses census data to assist in determinations about how to distribute hundreds of billions of dollars in federal funds to local, state, and tribal governments. The results of the census affect day-to-day government services, from education to public health to transportation.

10. The public has an overwhelming interest in ensuring that the census is accurate and fair. Moreover, because the census requires the active participation of every resident of the United States, the public depends on the government for a considerable amount of information about how and when to participate in the census, and about the importance of providing the government with detailed and sensitive personal information.

11. A transparent census is of particular importance to organizations such as Plaintiffs, which represent historically disenfranchised groups.

12. The Census Bureau has long admitted that the decennial census tends to undercount minorities and low-income persons. Following the 2010 census, despite

4

intensive advertising and outreach, the census acknowledged that it failed to count 2.1 percent of African Americans and 1.5 percent of Hispanic Americans, a total of 1.5 million people. These undercounts are comparable to the undercounts in the 2000 census.

13. Various factors account for why certain groups are persistently hard to count.

14. Many ethnic minorities, for example, fear that their census responses may be used to deport, imprison, or disqualify them from social welfare programs.

15. Residents who are not fully proficient in the English language or who otherwise lack formal education may have difficulty understanding census forms.

16. Rural residents are often hard to count because of their remoteness and lack of individual house addresses.

17. To address the problems associated with hard-to-count groups, the Census Bureau has in the past partnered with community organizations with influence in these communities. In 2010, for example, the Census Bureau enlisted tens of thousands of intermediaries, such as churches, charities, celebrities, and companies to explain to people the importance of completing their census forms.

18. Moreover, in the past, the Census Bureau has partnered with local NAACP units to deploy subcontractors that are familiar with the African American communities the census aims to count.

19. For those reasons, the census' accuracy and fairness have *always* depended on its transparency. But there is reason to believe that such transparency is particularly important in the lead-up to the 2020 Census.

20. Experts fear the Census Bureau is wholly unprepared for the upcoming

census, as it is suffering concretely from funding and staffing uncertainty and from a difficulty in assimilating new technology systems.

21.     These concerns recently prompted the Government Accountability Office ("GAO") to label the 2020 Census a "high-risk" program. GAO, "Report to Congressional Committees: Progress on Many High-Risk Areas, While Substantial Efforts Needed on Others" (Feb. 2017), http://www.gao.gov/assets/690/682765.pdf.

22.     The Census Bureau has not adequately informed the public as to how it is addressing these challenges.

23.     The Census Bureau has not provided information sufficient to show that it is adequately contending with uncertainty across the federal government with respect to the hiring of personnel.

24.     Upon taking office, President Donald Trump instituted a hiring freeze across much of the executive branch. *See* Presidential Memorandum, "Memorandum for the Heads of Executive Departments and Agencies" (Jan. 20, 2017), 82 F.R. 8346.

25.     A previous FOIA request revealed that, as of April 2017, there were 157 unfilled jobs at the Census Bureau because of the Trump Administration's hiring freeze.

26.     The government formally lifted the hiring freeze with a new order on April 12, 2017, Office of Management and Budget ("OMB") Memo M-17-22, and directed agencies to submit plans for personnel cuts and other restructuring moves to fit the budget blueprint.

27.     OMB instructed agencies to develop proposals for personnel changes by June 30, 2017 and to submit longer-term plans in September 2017. It is unknown whether Defendant has submitted its plan to OMB.

28.     Moreover, the Bureau lacks senior leadership. On May 8, 2017, Census Director John Thompson abruptly resigned, even though he had been expected to stay on through the end of 2017 or longer. The President has not indicated whether or when he will nominate a successor.

29.     The public does not know how the President's executive orders have affected the Bureau's hiring. It is further unclear what effects the initial hiring freeze, and the lack of senior leadership in the Bureau, have had on preparations for the 2020 Census at this crucial stage.

30.     The Census Bureau also faces significant uncertainty with respect to its budget, and has not provided adequate public accounting of the effects that uncertainty will have on preparations for, and the ultimate accuracy of, the 2020 Census.

31.     At this stage in the decennial census cycle, and continuing in the eighth and ninth year of the decade, the Census Bureau's funding normally increases precipitously. As the end of the decade approaches, the Bureau usually purchases new technology, tests that technology, compiles databases of residential addresses across the nation, secures office space, and begins to train workers.

32.     The Trump administration cut back on the previous administration's 2017 budget request for the Bureau by 10 percent, and then flat-lined that funding for 2018.

33.     Because of these budgetary shortfalls, the Bureau has admitted needing to make "really, really difficult decisions" about where to cut back. *Oversight of the 2020 Census*: *Hearing Before the House Committee on Appropriations, S. Comm. on Commerce, Justice, Sci., and Related Agencies* (May 3, 2017) (statement of John H. Thompson, Director, U.S. Census Bureau).

34. It has provided some public accounting of those cuts, including by describing its decisions to eliminate advertising in the 2018 End-to-End Census Test, a "dress rehearsal" that serves as the basis for many final decisions about the decennial census, to delay address-listing field work until 2019, and to delay the opening of six Regional Census Centers.

35. It is unknown whether these delays and cancellations are sufficient to address the budgetary shortfalls, what other programs may have been scaled back or cancelled due to budgetary concerns, and how the Bureau plans to guarantee the accuracy of the census despite having fewer resources.

36. This census cycle will involve drastic changes: for the first time, the census will be digital, a departure from paper-based and in-person methods of previous censuses. In light of these changes, the 2020 census faces remarkable challenges.

37. Rural, low-income, and older Americans are likelier than other residents to lack reliable access to Internet service. A digital census also presents cybersecurity risks, which could amplify some Americans' fears about providing sensitive information to the government.

38. Information regarding the Census Bureau's plans to digitize the 2020 census, conduct address canvassing, and conduct outreach to hard-to-count populations should be readily available to the public.

39. The Census Bureau has failed to fully communicate to the public its plans to carry out the 2020 census, especially in light of its overhaul of census procedures and technology and its ongoing budgetary and hiring uncertainty.

<u>Plaintiffs' FOIA Request to the U.S. Department of Commerce, Census Bureau</u>

40. On June 29, 2017, Plaintiffs submitted a FOIA request to the Census Bureau via email. A copy is attached as Exhibit A.

41. The FOIA request sought records relating to the Census Bureau's preparations for the 2020 census, including its plans to digitize the census and ensure the participation of certain "hard-to-count" populations. Moreover, in light of concerns that the 2020 Census will be understaffed and underfunded, the request sought records detailing the Bureau's hiring of employees and its cancellation or postponement of various other preparations. The request also sought limited information on the Census Bureau's preparations for the 2010 census, for purposes of comparison. The request included twelve numbered items.

42. The FOIA request also sought a fee waiver pursuant to 5 U.S.C. § 552(a)(4)(A)(iii) and 15 C.F.R. § 4.11, because the requested disclosure of information is in the public interest. The FOIA request described in detail the reasons why Plaintiffs' request meets the relevant statutory and regulatory criteria for a fee waiver.

43. On July 14, 2017, Plaintiffs received an "Interim Fee Waiver Denial" from the Census Bureau, which is attached as Exhibit B.

44. The "Interim Fee Waiver Denial" incorrectly stated that Plaintiffs "have designated [themselves] in the 'Educational' category" under 15 C.F.R. § 4.11, and that Plaintiffs therefore must provide a "current faculty identification card and a current syllabus for the respective class the research will be used for."

45. Plaintiffs' FOIA request did not designate Plaintiffs in the "Educational" category. Plaintiffs are not educational institutions.

46. The "Interim Fee Waiver Denial" also alleged that the Census Bureau's

FOIA office did not receive Plaintiffs' FOIA request until July 6, 2017, despite the fact that Plaintiffs sent the request directly to the Census Bureau's FOIA office email address, listed on Defendant's own website, on June 29, 2017.

47. The FOIA provides that the 20-day time limit for the agency to respond to a request "shall commence on the date on which the request is first received by the *appropriate component of the agency*, but in any event not later than ten days after the request is first received by any component of the agency." 5 U.S.C. § 552(a)(6)(A)(ii) (emphasis added).

48. Plaintiffs' email directed to the Census Bureau's FOIA Office email address was sent to the "appropriate component of the agency." The "Interim Fee Waiver Denial" included no explanation of why the Census Bureau's FOIA office needed four business days to "receive" Plaintiffs' request.

49. Contrary to Defendant's "Interim Fee Waiver Denial," the appropriate component of the agency received Plaintiffs' request on June 29, 2017, and all deadlines under the statute and regulations must by law be calculated from that date.

50. On August 4, 2017, Plaintiffs received an "Interim Extension" from the Census Bureau, which is attached as Exhibit C.

51. This letter stated that the Census Bureau "received [Plaintiffs'] request in this office on July 6, 2017," such that the deadline "for [the Census Bureau's] initial determination" is August 7, 2017. The letter then extended the time "for [the Census Bureau's] initial determination" until September 7, 2017. The letter cited "15 C.F.R. § 4.6(c)(2)" as justification for this extension.

52. There is no regulation denominated "15 C.F.R. § 4.6(c)(2)."

53.     The Census Bureau's decision to grant itself a 30-day day extension did not occur within 20 business days of either the claimed receipt date of July 6, 2017, or the actual receipt date of June 29, 2017, as required by statute. *See* 5 U.S.C. § 552(a)(6)(A)(i).

54.     Moreover, the Census Bureau's 30-day extension exceeded the statutory maximum of 10 days and failed to comply with the procedural requirements for any exception to this 10-day limit. 5 U.S.C. § 552(a)(6)(B)(i)-(iii); 15 CFR § 4.6(d)(1)-(2).

55.     On August 21, 2017, Plaintiffs submitted via FedEx, fax, and email a "Freedom of Information Act Appeal" of the Bureau's July 14, 2017 "Interim Fee Waiver Denial." This appeal is attached as Exhibit D.

56.     This appeal further elaborated the grounds that Plaintiffs qualify for a fee waiver, in addition to those grounds set forth in their original request. On August 22 and 23, 2017, the Census Bureau sent emails acknowledging receipt of the appeal.

57.     On August 30, 2017, Plaintiffs received an "Interim Response" from the Census Bureau, which is attached as Exhibit E.

58.     The "Interim Response" stated that Plaintiffs' "request is overly broad and does not clearly describe the records sought for items 6, and 7." The letter sought clarification within 30 calendar days, noting that it would otherwise close items 6 and 7.

59.     On September 8, 2017, Plaintiffs filed a "Clarification of FOIA Request" regarding items 6 and 7, which is attached as Exhibit F.

60.     This letter maintained that items 6 and 7, as originally requested, were reasonably described. However, Plaintiffs nevertheless, and without conceding that the Census Bureau's August 30, 2017 "Interim Response" was proper or timely, and without

11

waiving any objection to it, clarified and narrowed items 6 and 7.

61. Plaintiffs also expressed their willingness to discuss these items by telephone if useful to the Census Bureau.

62. The "Clarification of FOIA Request" also sought expedited processing pursuant to 15 C.F.R. § 4.6 (f)(1)(iii) with respect to items 6 and 7.

63. Under 15 C.F.R. § 4.6(f)(4), components are to "decide whether to grant [requests for expedited processing] . . . and . . . notify the requester of the decision" "[w]ithin ten calendar days of . . . receipt of a request for expedited processing."

64. On October 3, 2017, Plaintiffs received an Interim Response from the Census Bureau, which is attached as Exhibit G. Defendant provided several internet links and four documents and explained that "[w]e . . . will in the future provide additional responsive records on a rolling basis as well as a final determination and any appeals rights you may have under the FOIA to their release." Defendant also withheld portions of one document pursuant to FOIA Exemption 6, which it acknowledged constituted "a partial denial of your request," subject to Plaintiffs' right to pursue an administrative appeal of these withholdings within 90 days.

65. Defendant's October 3 communication and partial disclosure does not constitute a final agency determination of Plaintiffs' request as to any numbered item in the Request. No administrative appeal is available as to the October 3 disclosures, except as to the withheld portions of one document pursuant to Exemption 6.

66. On October 4, 2017, Plaintiffs' Counsel left a message with the Census Bureau's designated point of contact by telephone, who promptly returned the call and stated that the agency had not completed its production as to items 1-12, was working

12

diligently to identify and review potentially responsive records, and would continue to disclose records on a rolling basis over the coming weeks.

67. The Defendant's agency point of contact also stated on October 4, 2017 that the Census Bureau had agreed not to charge Plaintiffs fees in connection with the instant Request. The Census Bureau's deadline under 5 U.S.C. § 552(a)(6)(A)(ii) and 15 C.F.R. § 4.6(b) for responding to Plaintiffs' fee waiver appeal expired on September 19, 2017. Plaintiffs have to date not received any written statement confirming that the fee waiver has been granted, as communicated telephonically on October 4, 2017.

68. The Census Bureau's self-granted extension for producing requested documents was improper and in any event expired on September 7, 2017. Plaintiffs have, to date, received only incomplete responses to items 1 through 4 and 6 through 7, and no response to items 5 and 8 through 12.

69. The Census Bureau's deadline under 15 C.F.R. § 4.6(f)(4) for responding to Plaintiffs' request for expedited processing as to items 6 and 7 expired on September 18, 2017. Plaintiffs have received no notification from the Census Bureau as to the Bureau's decision on the request.

70. Due to the Census Bureau's failure to provide a final response to Plaintiffs' request even by its improperly extended deadlines, Plaintiffs have exhausted the applicable administrative remedies with respect to their FOIA request. See 5 U.S.C. § 552(a)(6)(C)(i).

## CAUSE OF ACTION

71. Plaintiffs repeat and re-allege each of the foregoing allegations as if fully set forth herein.

72. Plaintiffs have a legal right under FOIA to obtain the specific agency records sought in the Requests, and Defendant's failure to promptly make the requested records available to Plaintiffs has no legal basis.

73. Defendant currently has possession, custody or control of the requested records.

74. Defendant failed to determine within 20 days (excepting Saturdays, Sundays, and legal public holidays) after receipt whether to comply with Plaintiffs' FOIA request, in violation of FOIA, 5 U.S.C. § 552(a)(6)(A)(i), and applicable regulations promulgated thereunder.

75. Defendant failed to respond to Plaintiffs' request for expedited processing, in violation of 15 C.F.R. § 4.6(f)(4).

76. Defendant erroneously denied Plaintiffs' public interest fee waiver or fee reduction request in violation of 5 U.S.C. § 552(a)(4)(A)(iii) and 15 C.F.R. § 4.11(l).

77. Defendant has failed to disclose all responsive, non-exempt records responsive to Plaintiffs' request.

**REQUESTED RELIEF**

WHEREFORE, Plaintiffs respectfully request that this Court:

1. Assume jurisdiction over this matter;

2. Order Defendant to disclose the requested records in their entireties and to make copies available to Plaintiffs;

3. Declare that Defendant's failure to grant Plaintiffs' fee waiver request is unlawful and that Plaintiffs are entitled to a full fee waiver;

4. Enjoin Defendant from assessing fees or costs for processing of Plaintiffs' FOIA

   request;

5. Provide for expeditious proceedings in this action;

6. Award Plaintiffs costs and reasonable attorneys' fees in this action as provided by 5 U.S.C. § 552(a)(4)(E); and

7. Grant any other and further relief the Court deems appropriate.

Respectfully submitted,


/s/ Michael J. Wishnie

Benjamin Alter, Law Student Intern[+]
Sameer Jaywant, Law Student Intern[+]
Erinma Kalu, Law Student Intern[+]
Brandon Levin, Law Student Intern[+]
Abigail Olson, Law Student Intern[+]
Charlotte Schwartz, Law Student Intern[+]
Michael J. Wishnie, (ct27221)
Rule of Law Clinic
Yale Law School
127 Wall Street
New Haven, CT 06511
(203) 436-4780
michael.wishnie@ylsclinics.org

Bradford Berry, General Counsel[*]
Khyla D. Craine, Asst. General Counsel[*]
NAACP
4805 Mt. Hope Drive
Baltimore, MD 21215
(410) 580-5624
bberry@naacpnet.org
kcraine@naacpnet.org
*Counsel for Plaintiffs*

---

[+] Motion for law student admission forthcoming.
[*] Motion for admission *pro hac vice* forthcoming.